1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALFRED E. SHALLOWHORN,
CDCR #P-13049,

Plaintiff,

vs.

J. CARRILLO; F. GUZMAN; F. NUNEZ;
J. GALINDO; G. GODY; J. AGUIRRE;
Y. CASTILLO; H. MOSELEY; D.
ORANTES,

Defendants.

Case No.:  23-cv-02098-LL-DEB

**ORDER DISMISSING FIRST
AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM
PURSUANT TO 28 U.S.C.
§§ 1915(e)(2) & 1915A(b)**

**BACKGROUND**

On November 13, 2023, Plaintiff Alfred E. Shallowhorn ("Plaintiff" or "Shallowhorn"), an inmate proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. In it, Plaintiff alleged Defendants violated his constitutional rights while he was confined at Centinela State Prison ("CEN"). *Id.* On December 18, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), dismissed the Complaint for failure to state a claim and granted leave to amend. ECF No. 5. In its Order,

1

the Court notified Plaintiff that he must file an amended complaint within forty-five days. *Id.* at 9. Plaintiff filed his First Amended Complaint ("FAC") on January 29, 2024. ECF No. 6. For the reasons discussed below, the Court **DISMISSES** the FAC without prejudice for failure to state a claim.

### SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

**A.    Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, the FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must sua sponte dismiss a prisoner's IFP FAC, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) ("Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[T]he tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

/ / /

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.   Plaintiff's Factual Allegations**

In his FAC, Shallowhorn states that on November 22, 2022, he had a dispute with Correctional Officer Lopez.[1] FAC at 8. Lopez directed Nunez to lock Plaintiff in his cell but Plaintiff "refused." *Id.* Shallowhorn subsequently filed grievances against Lopez and claims that "Defendants were aware of such grievances." *Id.* He alleges that "months after" the November 22, 2022 incident, Carrillo, Nunez, and Galindo "entered into a conspiracy to target [Shallowhorn] in retaliation" for filing grievances against Lopez and for his refusal to "lock up." *Id.*

On April 14, 2023, Shallowhorn returned to his cell from the yard to find an Office of Appeals decision "left on [his] door handle." *Id.* at 8–9. Plaintiff believed this was "a sign." *Id.* at 9. The next day, Carrillo and Nunez conducted a search of Shallowhorn's cell and found two jars of liquid they identified as alcohol. *Id.* Plaintiff asserts the liquid was not alcohol. *Id.* Carrillo disposed of the liquid in the staff restroom. *Id.* Carrillo also confiscated Plaintiff's hot pot and his extra pair of tennis shoes. *Id.* Carrillo then "falsified" a Rule Violation Report ("RVR"), accusing Shallowhorn of being in possession of alcohol *Id.* at 10–11. On April 27, 2023, Plaintiff was found guilty of the RVR. *Id.* at 10. As a result, he was assessed 120 days loss of credits and 30 days loss of privileges ("LOP"), including use of the phone, yard, recreation, dayroom, and package privileges. *Id.*

/ / /

---

[1] Lopez is not a named defendant.

Shallowhorn claims Carrillo waited one extra day to restore his privileges and as a result, he served 31 days LOP instead of 30. *See id.* at 12–13. Specifically, Plaintiff states he was supposed to have his privileges restored on March 27, 2023 but on that date Carrillo and another officer (either Nunez or Galindo) "denied" him access to the yard, dayroom, and programs. *Id.* at 12. Plaintiff told Carrillo this was wrong and he was due to have his privileges restored that day. *Id.* at 13–14. Carrillo responded that Plaintiff's "last date" of LOP was May 27, 2023. *Id.* at 13. Shallowhorn accused Carrillo of making him do "extra days" of punishment and told him, "This is a kidnapp[ing]." *Id.*

Carrillo continued to "harass" Plaintiff and point him out to "other officers," causing Plaintiff to "get unpleasant looks and nods" from staff. *Id.* at 12. On October 18, 2023, Orantes "got hostile" with Shallowhorn and used a "threatening tone" when telling Shallowhorn to keep moving. *Id.* at 21. Aguirre, who is a supervisor, intervened but later tried to justify Orantes' aggressive behavior. *Id.* Orantes "works a couple days a week with . . . Carrillo" and as such "conspire[d]" against Shallowhorn. *Id.* At some point, Gody told Plaintiff he could search his cell every day if he wanted to. *Id.* at 16. Gody supervises Carrillo, Nunez, and Galindo and "condones" their conduct. *Id.*

Plaintiff seeks injunctive relief, $100,000 in compensatory damages, and $1,000,000 in punitive damages. *Id.* at 27.

## C.   Discussion

In his FAC, Plaintiff names nine Defendants—Guzman, Moseley, Gody, Aguirre, Castillo, Orantes, Galindo, Nunez, and Carrillo—all in both their official and individual capacities. Shallowhorn lists three "causes of action," some of which contain more than one basis for relief, while others overlap. FAC at 5–7. As such, the Court will discuss each of Plaintiff's claims for relief as set forth below for purposes of clarity.

### 1.   Official Capacity and Eleventh Amendment

To the extent Plaintiff sues Defendants for money damages in their official capacities, he is barred by the Eleventh Amendment. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the

official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits for money damages against states and their agencies under § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ." *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999). Thus, because the CDCR is a state agency, its employees, including Defendants, sued in their official capacities are immune from suit for monetary damages.

Accordingly, Shallowhorn's claims for monetary damages against all Defendants in their official capacities are **DISMISSED** as barred by the Eleventh Amendment. Because it is clear this jurisdictional bar cannot be cured by further amendment to the complaint, such a dismissal is without leave to amend. *See Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.")

### 2.    Retaliation

Plaintiff alleges Defendants retaliated against him for filing a grievance against Lopez, in violation of his First Amendment rights. *See* FAC at 5–6, 8. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Adverse actions include threats of discipline, transfer, or harm and do not need to be an independent constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).

Retaliation against prisoners for filing grievances violates the First Amendment. *Id.* at 1269; *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013) ("Prisoners have the right to litigate without active interference, a guarantee that exists so prisoners

/ / /

have a viable mechanism to remedy prison injustices.") (internal quotation marks, brackets, and citation omitted).

            a.    <u>Supervisory Liability: Guzman, Gody, Aguirre, Castillo, and Mosely</u>

First, as with all § 1983 claims, personal participation in the retaliatory conduct, and not merely the existence of a supervisory relationship, is required to hold supervisors liable. *Iqbal*, 556 U.S. at 676 (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person does not become liable for retaliation merely because he or she knows of, or is a supervisor of, someone who engages in retaliation. *Cf. Iqbal*, 556 U.S. at 677. Each defendant must be aware of the protected conduct and that conduct must give them a retaliatory motive that causes the chilling adverse conduct; mere speculation is insufficient. *Id*.

Here, Plaintiff fails to allege any facts to suggest Guzman, Mosely, Castillo, Aguirre, and Gody, personally participated in retaliatory conduct. Shallowhorn alleges Guzman, as warden, allowed "staff under his authority to violate policy." FAC at 23. He further states Castillo and Moseley acted "with gross negligence in managing subordinates who caused the wrong." *Id.* at 20. As to Aguirre, Shallowhorn claims he "failed to make [subordinate correctional officers] comply with policy." *Id.* at 3. Finally, he alleges that Gody, as the supervisor of Carrillo, Nunez, and Galindo, "condone[d] their actions." *Id.* at 16. None of these allegations, however, amount to personal participation in retaliatory conduct. Therefore, because there is no supervisory liability under § 1983, Plaintiff fails to state a retaliation claim against Guzman, Mosely, Castillo, Aguirre, and Gody. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678; *Taylor*, 880 F.2d at 1045.

            b.    <u>Orantes</u>

Shallowhorn also fails state a retaliation claim against Orantes. He alleges that on October 18, 2023, Orantes "got hostile" with him and used a "threat[ening] tone." FAC at 21. As noted above, to state a retaliation claim, a plaintiff must sufficiently allege the

defendant's adverse action was taken because of the plaintiff's protected conduct. *Watison*, 668 F.3d at 1114. Specifically, "[P]laintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim*, 585 F.3d at 1271 (internal quotation marks omitted).

Here, Shallowhorn alleges Orantes' retaliation stemmed from his filing grievances against Officer Lopez after a November 22, 2022 dispute. FAC at 8. But Plaintiff provides no factual allegations to show Orantes was aware of the grievances against Lopez. Instead, Shallowhorn speculates that Carillo, Nunez, and Galindo agreed to retaliate against him "months after" his dispute with Lopez. *Id.* He then surmises that because Orantes works with Carrillo "a couple days a week," Orantes must have joined the agreement at some point and "retaliated" against him on October 18, 2023. *See id.* at 21. But this kind of speculation is insufficient to state a retaliation claim. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("Mere speculation that defendants acted out of retaliation is not sufficient."). Moreover, while timing can be considered as circumstantial evidence of retaliatory conduct, it is of little help to Plaintiff here because Orantes' purported statements occurred almost a year after Shallowhorn's grievances against Lopez. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *see also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (affirming summary judgment for defendant on retaliation claim where plaintiff alleged that retaliation occurred "six or seven months" after protected speech). Therefore, Plaintiff has failed to state a retaliation claim against Orantes. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

c.   <u>Carrillo, Nunez, Galindo</u>

Shallowhorn fails to state a retaliation claim against Carrillo, Nunez, and/or Galindo for similar reasons. As noted above, Plaintiff alleges his protected conduct arose from a

/ / /

/ / /

/ / /

/ / /

7

November 22, 2022 dispute with Lopez and subsequent grievances related to the dispute.[2] While Plaintiff states generally that "Defendants knew about the grievances," he fails to provide specific facts to support that conclusory statement. FAC at 8. Shallowhorn's speculation that "months after" the dispute, Carrillo, Nunez, and Galindo agreed "to target [him] in retaliation for 602'ing (grievances) c/o Lopez" [FAC at 8] is insufficient to state a plausible claim. *See Iqbal,* 556 U.S. at 678 (stating "mere conclusory statements, do not suffice"); *see also Wood*, 753 F.3d at 905.

And even if Carrillo, Nunez, and Galindo were aware of the grievances, Plaintiff still fails to plausibly allege they were the "substantial" or "motivating" factor behind the alleged adverse conduct, which allegedly began on April 15, 2023, when Carrillo and Nunez searched Plaintiff's cell, nearly five months after the purported protected conduct.[3] *See Brodheim*, 584 F.3d at 1271; *Pratt*, 65 F.3d at 808; *see also Hill v. Marciano*, No. 220CV01717JADDJA, 2021 WL 8016909, at *3 (D. Nev. July 30, 2021) (stating a plaintiff must "allege facts sufficient to show that the particular defendant was aware of the protected conduct and that the conduct provided that particular defendant with a retaliatory motive causing the defendant to engage in retaliatory adverse conduct; mere speculation is insufficient"). Retaliation is not established simply by showing some adverse activity took place after the occurrence of protected speech; rather, a plaintiff must show a connection between the two events. *Husky*, 204 F.3d at 899. Therefore, Plaintiff has failed to state a retaliation claim against Carrillo, Nunez, and Galindo. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

/ / /

---

[2] Plaintiff appears to also allege the retaliation was in part related to his refusal to "lock-up" on November 22, 2022. But refusal to follow a correctional officer's order to "lock up" is not "protected conduct" under the First Amendment.

[3] As for Galindo, Plaintiff alleges only that he might have been present when Carrillo refused to restore Plaintiff's privileges on May 27, 2023. Specifically, Shallowhorn states he "believe[s]" Carrillo was assisted by either "Nunez or Galindo." FAC at 12.

d.   Conclusion

Based on the above, Plaintiff has failed to state a First Amendment retaliation claim against any Defendant and therefore the claim is **DISMISSED** in its entirety. Because Plaintiff is proceeding pro se and it is possible he may be able to cure the above deficiencies, the Court **GRANTS** leave to amend this claim. *See Lopez*, 203 F.3d at 1127 (stating a district court should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

**3.   Due Process**

Shallowhorn alleges his right to due process was violated when he was found guilty of an RVR based on "false" evidence and assessed 120 days of lost good-time credits and 30 days loss of phone, yard, recreation, dayroom, and package privileges. FAC at 10. He also appears to allege his due process rights were violated by a failure to comply with Title 15 of the California Code of Regulations. *Id.* at 5.

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (alteration in original) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). A federally protected liberty interest arises where a sentence is exceeded in "an unexpected manner" or where an inmate is subject to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

a.   Loss of Privileges

Plaintiff fails to state a due process claim because a 31-day LOP does not involve an atypical and significant hardship and as such it does not give rise to a state-created liberty interest. *See Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.) (stating hardships "such as loss of recreational and rehabilitative programs or confinement to one's cell for a

lengthy period of time" do not give rise a liberty interest), opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995); *Davis v. Small*, 595 Fed. App'x 689, 691 (9th Cir. 2014) (finding no liberty interest in telephone or yard privileges) (citing *Sandin*, 515 U.S. at 487); *see also Baker v. Lugo*, No. 216CV3671PAGJS, 2017 WL 1428734, at *3 (C.D. Cal. Mar. 21, 2017) (concluding loss of access to yard privileges, dayroom privileges, telephone privileges, and vendor package privileges did not establish existence of state-created liberty interest).

### b.   Loss of Credits

As for Shallowhorn's loss of credits, even assuming he could allege a liberty interest,[4] he still fails to state a claim. "A state prisoner cannot use a § 1983 action to challenge the 'fact or duration of his confinement,' because such an action lies at the 'core of habeas corpus.'" *Simpson v. Thomas*, 528 F.3d 685, 693 (9th Cir. 2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Thus, where a § 1983 action seeking damages alleges constitutional violations that would necessarily imply the invalidity of a conviction or sentence, the prisoner must first establish that the underlying sentence or conviction has already been invalidated on appeal, by a habeas petition, or terminated in his favor via some other similar proceeding. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

---

[4] While Shallowhorn does not indicate the length of his sentence in his FAC, it appears he is serving life without the possibility of parole. *See* California Incarcerated Records and Information Search, https://apps.cdcr.ca.gov/ciris/details?cdcrNumber=P13049 (last visited May 21, 2024). Because the loss of good-time credits can make no difference to the length of a life-without-parole sentence, it cannot constitute the kind of "significant or atypical hardship" required to create a liberty interest. *See Lees v. Mariscal*, No. 19-CV-01603-HSG, 2022 WL 4591794, at *6 (N.D. Cal. Sept. 29, 2022) ("Credit loss by an inmate serving a life term without the possibility of parole also does not constitute an atypical and significant hardship within the meaning of *Sandin*."); *Richson-Bey v. Watrous*, No. 121CV01482AWIGSAPC, 2022 WL 14746909 at *5 (E.D. Cal. Oct. 25, 2022); *Roman v. Knowles*, No. 07CV1343-JLS POR, 2011 WL 3741012, at *13–14 (S.D. Cal. June 20, 2011) (holding that life prisoner assessed with ninety-day forfeiture of good time credit had no protectable liberty interest for purposes of due process claim).

This "favorable termination" rule applies to prison disciplinary proceedings, if those proceedings resulted in the loss of good-time or behavior credits. *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (holding that claim for monetary and declaratory relief challenging validity of procedures used to deprive prisoner of good-time credits is not cognizable under § 1983); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) if success in that action would necessarily demonstrate the invalidity of confinement or its duration").

Here, Plaintiff contends he lost credits based on a "false RVR"[5] and therefore, his claim necessarily implies the invalidity of his disciplinary conviction. And because Shallowhorn's disciplinary conviction has been reversed, expunged, or otherwise invalidated, he does not state a plausible claim for relief. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004); *see also Coley v. Duffy*, No. 1:13-CV-00912-BAM-PC, 2016 WL 1359799, at *6 (E.D. Cal. Apr. 5, 2016) (dismissing prisoner's § 1983 complaint alleging loss of custody credits and of being falsely charged with a disciplinary violation pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A as barred by *Heck*).

/ / /

---

[5] Federal courts have found there is no protected Constitutional right to be free from false disciplinary charges. *See e.g. Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (noting the plaintiff's allegations based on the falsity of disciplinary charges alone, did not state constitutional claims); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) (concluding allegations of a false or fabricated disciplinary charge against an inmate fail to state a claim under § 1983); *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating prisoners have no constitutional right to be free from wrongfully issued disciplinary reports); *Harvey v. Burris*, No. C 14-4133 RS (PR), 2015 WL 8178572 at *3 (N.D. Cal. Dec. 8, 2015) (finding allegations that defendants filed false disciplinary report did not give rise to § 1983 claim).

c.     California Code of Regulations

Finally, Plaintiff cannot base his due process claims on an argument that his alleged 31-day LOP violated sections 3322(c) and 3330(g) of Title 15 of the California Code of Regulations. *See Vos v. Hesdgpeth*, No. 1:08-CV-00041-SMS PC, 2011 WL 90225, at *3 (E.D. Cal. Jan. 11, 2011) ("Plaintiff may not rely upon the existence of [California Code of Regulations] section 3322 to establish the existence of a liberty interest entitling him to procedural protections under federal law"). Section 1983 "only creates a cause of action for violations of the federal 'Constitution and laws.'" *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Id*. (citation omitted). Thus, even assuming Plaintiff is correct that his 31-day LOP violated section 3322(c) or section 3330(g) of the California Code of Regulations,[6] he cannot assert a § 1983 claim on that basis.

d.     Conclusion

In sum, Plaintiff has failed to state a due process claim under the Fourteenth Amendment. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. And because it is clear amendment would be futile, the claims are **DISMISSED** as to all Defendants without leave to amend. *See Zixiang*, 710 F.3d at 999.

**4.     Eighth Amendment**

Shallowhorn claims Defendants violated his Eighth Amendment rights when they failed to restore his privileges on March 27, 2023. FAC at 6. Plaintiff alleges that he felt

---

[6] Under section 3330(g), "disciplinary detention for longer than 30 days shall be accompanied by a current psychological evaluation of the inmate's mental health." Cal. Code Regs. tit. 15, § 3330(g). But the Court notes that Shallowhorn concedes he began his 30-day LOP on April 27, 2023 and was released on May 28, 2023. FAC at 10, 13. This appears to comply with section 3330(d), which states: "Time served in disciplinary detention will be computed on the basis of full days in detention. The day of placement and the day of release *will not count as a day of time served*." Cal. Code Regs. tit. 15, § 3330(d) (emphasis added).

1  "kidnapped" which caused "stress, anxiety, and social displacement." *Id.* at 23.

2       To state an Eighth Amendment conditions-of-confinement claim, a prisoner must

3  meet both an objective and subjective test. *Johnson v. Lewis*, 217 F.3d 726, 731

4  (9th Cir. 2000). The objective prong requires showing that the alleged deprivation was

5  "objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting

6  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This requires the prisoner to demonstrate

7  "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized

8  measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The

9  subjective prong requires a "sufficiently culpable state of mind" through a showing of the

10  prison officials' "deliberate indifference" to inmate health and safety. *Farmer*, 511 U.S. at

11  834. Liability may follow only if a prison official "knows that inmates face a substantial

12  risk of serious harm and disregards that risk by failing to take reasonable measures to abate

13  it." *Id.* at 847.

14       First, to the extent Shallowhorn names Guzman in his capacity as warden and Gody,

15  Aguirre, and Mosely in their capacities as supervisors, he fails to state an Eighth

16  Amendment claim. As discussed above, there is no supervisory liability under § 1983.

17  *Taylor*, 880 F.2d at 1045. Knowledge and acquiescence of a subordinate's misconduct is

18  insufficient to establish liability; each government official is only responsible for his or her

19  own misconduct. *See Iqbal*, 556 U.S. at 677.

20       Similarly, Plaintiff fails to state an Eighth Amendment claim against Orantes and/or

21  Castillo because he alleges no facts to suggest either defendant participated in denying him

22  privileges on May 27, 2023. *See Taylor*, 880 F.2d at 1045.

23       Shallowhorn also fails to state an Eighth Amendment claim as to Carrillo, Nunez,

24  and Galindo for denying him the resumption of privileges on May 27, 2023. Specifically,

25  he fails to plausibly allege that a loss of privileges for a single day amounted to a "serious

26  deprivation" of a basic human need. *See Rhodes*, 452 U.S. at 346 ("[T]he Eighth

27  Amendment prohibits punishments which, although not physically barbarous, 'involve the

28  unnecessary and wanton infliction of pain.'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 173

(1976)); *Wilson*, 501 U.S. at 298 ("[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment claim."). He also fails to plausibly allege an Eighth Amendment violation based on alleged verbal abuse and harassment on the part of Carrillo, Nunez, and Galindo. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (stating "verbal harassment generally does not violate the Eighth Amendment"), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); *Watison v. Carter*, 668 F.3d at 1113 (stating "the exchange of verbal insults" does not amount to an Eighth Amendment violation) (citation omitted).

And finally, 42 U.S.C § 1997e(e) requires a showing of a "physical injury that need not be significant but must be more than de minimis" before a prisoner may recover damages for emotional injuries. *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002). Here, Plaintiff's vague assertion that he has suffered "stress," "anxiety," and "emotional injury" as a result of being held in his cell for an extra day is insufficient to support an Eighth Amendment claim seeking damages. *See id.*

For the above reasons, the Court finds Plaintiff has failed to state an Eighth Amendment claim as to any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. Because the Court finds further leave to amend this claim would be futile, it is **DISMISSED** without leave to amend. *See Zixiang*, 710 F.3d at 999.

### 5. Conspiracy

Shallowhorn alleges Carrillo, Nunez, Galindo, and Orantes conspired to retaliate against him. FAC at 8, 21. "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). "[A] plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). In addition, a plaintiff

must show that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071–72 (9th Cir. 2006) (quoting *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989)).

Here, Plaintiff alleges he "believe[s] months after [his disagreement with Lopez] is when defendants Carrillo, Nunez [and] Galindo entered into a conspiracy to target [him] for retaliation." FAC at 8. He further states that Orantes later entered the conspiracy because he "work[ed] a couple days a week with Defendant Carrillo." *Id.* at 21. But Shallowhorn provides no specific facts to support these conclusory allegations. While an agreement "may be inferred on the basis of circumstantial evidence," here Plaintiff has failed to allege *any* facts from which this Court could infer a "meeting of the minds" by Carrillo, Nunez, Galindo, and/or Orantes. *See Crowe*, 608 F.3d at 440; *Burns v. Cnty. of King*, 883 F.2d at 821 ("To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy"); *see also Solomon v. Las Vegas Metro. Police Dep't*, 441 F. Supp. 3d 1090, 1100 (D. Nev. 2020) ("[M]ere recitation of the elements [of conspiracy] does little to help his claim."). And in addition, as discussed above, Shallowhorn has failed to state a First Amendment retaliation claim and as such has not plausibly alleged that a deprivation of his constitutional rights resulted from any purported conspiracy. *See Hart*, 450 F.3d at 1071–72.

Therefore, Plaintiff has failed to state a conspiracy claim against Carrillo, Nunez, Galindo, and Orantes, and the Court **DISMISSES** this claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678; *Crowe*, 608 F.3d at 440. Because Plaintiff may be able to cure the above deficiencies, the Court **GRANTS** leave to amend this claim. *See Lopez*, 203 F.3d at 1127.

### 6.   Equal Protection

Plaintiff alleges that Defendants charged him with a disciplinary charge because they were "intentionally bias[ed] and racist," in violation of his right to equal protection. FAC at 17. He also appears to allege an equal protection claim based on a "class of one." *Id.*

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To state an equal protection claim, a plaintiff generally must "show that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) ("We have held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.").

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564.

First, Shallowhorn fails to allege *any* facts suggesting Guzman, Aguirre, Gody, Castillo, Mosely, and/or Orantes acted in a discriminatory manner or treated him differently from any other inmate. And his general and unspecified claim that Defendants are "racist" is insufficient to allege intentional discrimination or difference in treatment based on membership in a suspect class. *See Iqbal*, 556 U.S. at 678 (stating a claim based on "naked assertion[s]" devoid of "further factual enhancement" is insufficient (quoting *Twombly*, 550 U.S. at 557)).

/ / /

Plaintiff states he is a "class of one" and Carrillo, Nunez, and Galindo "treated [him] different[ly]" than other inmates who lost privileges after an RVR. But beyond this conclusory statement, Plaintiff alleges no facts showing discriminatory intent. Shallowhorn concedes he is unsure of who, if anyone, was with Carrillo on May 27, 2023 when he refused to restore Shallowhorn's privileges. *See* FAC at 12. As such, he fails to state a plausible claim against Nunez and Galindo. And to the extent Shallowhorn alleges Carrillo should have restored his privileges May 27, 2023, he nonetheless fails to allege any facts to show Carrillo did so with discriminatory intent. *See Brock v. Langford*, No. LACV17464RGKLAL, 2017 WL 6334022 at *4 (C.D. Cal. Nov. 13, 2017) (denying a prisoner's class-of-one claim in part because prisoner "has not shown that any different treatment was intentional"); *see also Adkins v. Gastelo*, No. EDCV 19-1137-FMO-KS, 2019 WL 6433643 at *8 (C.D. Cal. July 19, 2019) (denying prisoner's class-of-one claim because he "fail[ed] to allege any facts suggesting that defendants . . . intentionally treated him differently."). Indeed, Carrillo does not appear to have treated Plaintiff differently from other inmates because, as discussed above, "[t]ime served in disciplinary detention will be computed on the basis of full days in detention. The day of placement and the day of release will not count as a day of time served." Cal. Code Regs. tit. 15, § 3330(d).

Accordingly, the Court finds Plaintiff has failed to state an equal protection claim. *See* 28 U.S.C. § 1915(e)(2) and § 1915A. Because it is clear amendment would be futile, the claim is **DISMISSED** without leave to amend. *See Zixiang*, 710 F.3d at 999.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court:

1.      **DISMISSES** all official capacity claims against all the named Defendants and Plaintiff's Due Process, Eighth Amendment, and Equal Protection claims against all Defendants with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).

2.      **DISMISSES** Plaintiff's First Amendment retaliation claim and his conspiracy claim without prejudice for failure to state a claim upon which relief may be granted

pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).

3.     **GRANTS** Plaintiff leave to file a Second Amended Complaint on or before **June 24, 2024** which cures the deficiencies of pleading noted in this Order **as to his retaliation and conspiracy claims only**. Plaintiff's Second Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a Second Amended Complaint, the Court will enter a final order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated:  May 24, 2024

Honorable Linda Lopez
United States District Judge